Norman HAWKINS, Appellant,

v.

UNITED STATES, Appellee.

No. 6592.

District of Columbia Court of Appeals.

Argued Jan. 16, 1973.

Decided April 23, 1973.

Lee Cross, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Douglass J. McCollum, Asst. U. S. Attys., were on the brief, for appellee. John C. Lenahan, Asst. U. S. Atty., also entered an appearance for appellee.

Before NEBEKER, PAIR and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

This appeal is from a conviction of carrying a pistol without a license,[1] which was charged as a felony because of a previous like conviction. Appellant challenges (1) the admission of the gun and incriminating statements made to the police,

which statements the trial court found were made after appellant waived his *Miranda*[2] rights; and (2) the sufficiency of the evidence. After reviewing the record and briefs, and hearing arguments, we affirm.

Upon hearing a loud noise like a gunshot from her bedroom, and a cry from her grandson who was in the room, Mrs. Bessie Ivey ran into the room to find a hole in the ceiling, plaster on the child and on the floor, and a bullet on the floor. Appellant's brother, who lived directly above Mrs. Ivey, testified that appellant was in his (the brother's) apartment on the afternoon of the shooting. While appellant's brother was temporarily out of the room, he heard a gunshot and, upon returning, appellant stated that he had been reaching into his coat pockets for something and had accidentally pulled the trigger. At this point appellant left the apartment stating he would be back. Appellant's brother never saw the gun.

When the police responded to a call by Mrs. Ivey they saw the hole in the ceiling, the plaster dust, and a 9 mm. bullet with plaster on it given to them by Mrs. Ivey, who had recovered it from the floor. Upon going upstairs to determine the source of the gunshot, the police were told by appellant's brother what had transpired. Approximately 10 to 15 minutes after the police arrived, appellant returned, breathing hard and perspiring. He was frisked and a knife was recovered. He was then placed under arrest and advised of his *Miranda* rights.[3] Upon being asked if he understood his rights, appellant, by his demeanor and responses, indicated understanding. Appellant was then advised as to what his brother had told the police and was asked the whereabouts of the gun. Appellant initially refused to reveal the lo-

---

1. D.C.Code 1967, § 22–3204.

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Appellant was advised of his rights by being read PD Form 47. No challenge is made to the sufficiency of the warning as testified to by the officer. We note that this method of advising an individual of his rights is a widespread and acceptable method. United States v. Frazier, 476 F.2d 891 at 898 (D.C.Cir. 1973).

cation of the gun, stating he did not want to get others in trouble. The police assured him that he would be the only one to get in trouble. This exchange was repeated about three times and appellant then agreed to take the police to where the gun was located. During the questioning, appellant's brother and several police officers were present.

Appellant took the police to a location approximately 6 blocks away. Prior to departing for this location, after arriving but prior to entering, and after entering but prior to going to one of the apartments, appellant requested that the police allow him to recover the gun alone. The police refused to do so and appellant then took them to one of the apartments where appellant met another man and told him he had come there for the package he had previously left. The other man, after hesitating and being told by appellant that it was all right, then produced a loaded 9 mm. gun with one round expended. The police immediately took the gun from appellant's friend. Appellant then identified the gun as the one he had left there and stated that it was his.

It is argued that it was error for the trial court (1) to deny appellant's motion to suppress the gun and his statements since they were obtained in violation of his right to presentment without unnecessary delay; and (2) to deny appellant's motion for acquittal since the government assertedly failed to prove the essential element of possession of the gun.

■■ A valid waiver of an individual's *Miranda* rights is also a waiver of his *Mallory*[4] right to presentment without unnecessary delay. Pettyjohn v. United States, 136 U.S.App.D.C. 69, 419 F.2d 651 (1969), cert. denied, 397 U.S. 1058, 90 S.Ct. 1383, 25 L.Ed.2d 676 (1970). In determining whether an individual has made a knowing and intelligent waiver of his *Mi-*

*randa* rights, the courts consider many factors. Among those factors are (1) the individual's prior experiences, including those with the criminal justice system which tend to indicate an awareness of his rights, Mitchell v. United States, 140 U.S. App.D.C. 209, 434, F.2d 483, cert. denied, 400 U.S. 867, 91 S.Ct. 109, 27 L.Ed.2d 106 (1970); Pettyjohn v. United States, *supra; cf.* Hensley v. United States, D.C.Mun. App., 155 A.2d 77 (1959); (2) whether the individual was questioned in private, United States v. McNeil, 140 U.S.App.D.C. 3, 433 F.2d 1109 (1969); (3) whether the individual repudiates his confession or alleges coercion or trickery, *id.;* and (4) the delay encountered between the individual's arrest and when the confession is obtained, Mitchell v. United States, *supra.*

■ The record shows that appellant had had previous experiences with law enforcement. It was therefore permissible to consider that factor in determining whether appellant was aware of his rights. *Id.;* Pettyjohn v. United States, *supra.* The confession was obtained shortly after the police arrived and after the required *Miranda* warnings were given and appellant revealed he understood the warnings. The questions were asked and the subsequent confession obtained in the brother's apartment and in his presence, and also in the presence of appellant's friend. Appellant did not allege coercion or trickery by the police and did not repudiate his confession. Indeed, appellant appeared to be more concerned with involving others than in incriminating himself as evidenced by his initial reluctance to take the police to the location of the gun. Based upon this evidence, the trial court permissibly found that appellant made a knowing and intelligent waiver of his *Miranda* rights and that he spoke voluntarily. By so doing, he necessarily waived any right to prompt presentment, a proceeding for the effectuation of those rights.[5]

---

4. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

5. We thus do not reach the contention that D.C.Code 1972 Supp., § 4–140a(b) is an

Appellant also argues that since the trial judge commented that he had great doubts about the officers' conduct in repeatedly asking appellant to take them to the location of the gun, he was not satisfied beyond a reasonable doubt that the confession was voluntary. *See* Scurry v. United States, 120 U.S.App.D.C. 374, 347 F.2d 468 (1965). We view the question of voluntariness, that is, admissibility, as encompassing both "waiver" and "coercion". United States v. Watson, 469 F.2d 362 (5th Cir. 1972). Appellant relies on Pea v. United States, 130 U.S.App.D.C. 66, 397 F.2d 627 (1967), for the proposition that a judge must be satisfied beyond a reasonable doubt that a confession is voluntary before it will be admitted into evidence. This was the burden of proof imposed by the United States Court of Appeals for the District of Columbia Circuit through exercise of its . then [6] supervisory power over the administration of justice in the District of Columbia. We hold that the reasonable doubt standard no longer prevails in light of language in Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). In *Lego*, the Supreme Court held that the Constitution did not require the states to apply the reasonable doubt standard to the voluntariness question. That decision expressly left the states free to set a higher standard than a preponderance of the evidence in determining whether a confession was voluntary. Although *Lego* did not involve a federal prosecution, the Supreme Court did speak on this matter as it relates to federal superintendence. The Court said, "It is no more persuasive to impose the stricter standard of proof as an exercise of supervisory power than as a constitutional rule." *Id.* at 488 n.16, 92 S.Ct. at 626. Therefore, in light of this supervening language by the Supreme Court, "the proper standard for a federal district court to apply in determining the admissibility of a confession is the preponderance stand-

ard." United States v. Watson, *supra* 469 F.2d at 365. The United States Court of Appeals for the Second Circuit by implication formerly applied the reasonable doubt standard, *see* United States v. Schipani, 289 F.Supp. 43 (E.D.N.Y.1968), aff'd, 414 F.2d 1262 (2d Cir. 1969), but in light of Lego v. Twomey, *supra,* has adopted a preponderance test. United States v. Cole, 463 F.2d 163 (2d Cir. 1972) ; United States v. Collins, 462 F.2d 792 (2d Cir. 1972). After Lego v. Twomey, *supra,* the United States Courts of Appeals for the Ninth and Tenth Circuits apply a preponderance standard. United States v. Cluchette, 465 F.2d 749 (9th Cir. 1972) ; United States v. Davis, 456 F.2d 1192 (10th Cir. 1972).

■ Although the trial court judge did not say what standard of proof he applied, at a minimum his ruling is, on this record, sustainable under the preponderance standard. Appellant does not alternatively argue to the contrary. In light of the adoption of the preponderance standard under Lego v. Twomey, *supra,* any error in admitting appellant's statement while entertaining a reasonable doubt about voluntariness is at best harmless error which we are required to ignore. *See* D.C.Code 1972 Supp., § 11–721(e).

■ Appellant also contends that it was error to deny his motion for acquittal since the government had failed to prove the essential element of possession of the gun at the time of the offense. He contends the offense occurred at the brother's home where appellant had been staying periodically. (Br. at 27.) The evidence, however, shows that appellant carried the gun to the house where he took the police to recover it. He said to the occupant of that house, in the officers' presence, that he "came to pick up the package he left there." The gun was then produced and appellant admitted it was his. Clearly,

unconstitutional limitation on the constitutional rights sought to be aided by the *Mallory* decision applying the exclusion-

ary rule to statements made during delay in presentment.

6. *Now see* D.C.Code 1972 Supp., § 11–102.

there was evidence, including direct evidence, of appellant's admissions to his brother and to the officers that he carried the gun from one house to another. Whichever house was his residence, thus to raise that defense under the statute, the other was not. Moreover, evidence of carrying the gun on the street was also sufficient for conviction. From all the evidence it was permissible for the jury to infer that the pistol fired was the one appellant carried to the other house and was later recovered by him for the police.

The conviction is

Affirmed.