Leon D. **WILKERSON**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 79–809.

District of Columbia Court of Appeals.

Argued Sept. 29, 1980.

Decided June 10, 1981.

Mady Gilson, Public Defender Service, Washington, D.C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D.C., was on briefs, for appellant. Michael B. Waitzkin, Public Defender Service, Washington, D.C., also entered an appearance for appellant.

Anthony C. Digioia, Asst. U. S. Atty., Washington, D.C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, Michael W. Farrell and Reggie B. Walton, Asst. U. S. Attys., Washington, D.C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and KERN, Associate Judges.

KERN, Associate Judge:

At approximately 2 a. m. on September 18, 1979, Officer Edward Meadows of the Metropolitan Police Department observed appellant walking along the edge of a street in an industrial area of the city pushing a wire mesh shopping cart. The officer, dressed in plain clothes and patrolling in an unmarked police cruiser, pulled up to appellant, identified himself as a police officer and asked appellant to stop so they could talk. Appellant initially sought to avoid the officer, kept walking and even ran a short distance. When he did eventually stop and talk with the officer, he gave conflicting accounts of where he obtained certain property in the shopping cart. Other officers arrived at the scene and Officer Meadows seized the articles in the shopping cart as suspected proceeds of a crime, but appellant was not arrested.

Eight days later, appellant went to the First District police station and sought to reclaim the seized articles.[1] In the interim, the seized articles had been identified as having been stolen from a building near the place where appellant had been stopped. Officer Meadows identified appellant as the man from whom he had taken the property and appellant was then advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 463, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965), and arrested. Upon questioning, appellant admitted that he had committed burglary and, after receiving his *Miranda* rights a second time, he signed a confession.[2]

Prior to trial, appellant sought to have the court suppress the seized property and the statements made to the police. The trial court denied those motions. At a trial, on stipulated facts, appellant was convicted on one count of second-degree burglary. D.C.Code 1973, § 22–1801(b), one count of attempted second-degree burglary, D.C. Code 1973, § 22–103, and two counts of petit larceny, D.C.Code 1973, § 22–2202.

Appellant challenges those convictions, maintaining that (1) the property seized from the shopping cart should have been suppressed since Officer Meadows acted without probable cause and (2) the statements to police should have been suppressed on grounds that they were the "fruit" of the illegal seizure; they were not made voluntarily and they did not follow a knowing, intelligent and voluntary waiver by appellant of his *Miranda* rights.

■ We assume for the purpose of determining this appeal that the trial court's ruling denying appellant's motion to suppress the articles seized from the shopping cart was incorrect and that the officer lacked probable cause. Nevertheless, we are persuaded that the convictions must stand because they rest on other evidence not the "fruit" of that illegal seizure: appellant's confessions and the reports from the victims of the thefts of their property.

Appellant asserts that the statements he gave the police should have been suppressed as the "fruit" of an illegal seizure by Officer Meadows. The exclusionary rule generally bars the use at trial of evidence obtained as a result of searches and seizures which violate the Fourth Amendment. Although the exclusionary rule also extends to the indirect products or "fruits" of illegal invasions, the Supreme Court has recognized that the rule will not apply where

1. Appellant also tried to reclaim the property one and one-half hours after the seizure by Officer Meadows.

2. Appellant confessed to two burglaries. The property seized from the shopping cart had been taken from the offices of Bechtel, Inc. The police also recovered pawnbroker tickets positively identified as having been signed by appellant which led to the recovery of certain property taken from the offices of Dynatrend, Inc. Both companies have offices in the area where appellant was stopped by Officer Meadows.

"the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint' " of the illegal search and seizure. *Wong Sun v. United States*, 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), *citing Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939).

The central issue is "whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun, supra*, 371 U.S. at 488, 83 S.Ct. at 417, *quoting* Maguire, Evidence of Guilt 221 (1959). A number of factors have been identified which should be considered in determining whether the link between particular evidence and an unlawful search or seizure is sufficiently attenuated to allow its use at trial.

One important factor is the extent to which evidence obtained following the illegal police action involves an act of free will by the defendant. *Brown v. Illinois*, 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975); *Wong Sun, supra* 371 U.S. at 486, 83 S.Ct. at 416. In this case there was nothing which compelled appellant to return and confess to the police after the seizure of the contents of his shopping cart. He was not under arrest. Certainly appellant was not coerced into going to the police station merely because the police held the seized property. Appellant knew the property to be stolen, the product of his own burglary.

There is also no evidence that appellant was pressured, harassed or subjected to any form of duress before he made his confession. He was given his *Miranda* rights and he admitted his acts just minutes after questioning began. The Court has said that although *Miranda* warnings alone will not *per se* break the causal connection with an

illegal seizure and make the statement an act of free will, "[t]he *Miranda* warnings are an important factor . . . in determining whether the confession is obtained by exploitation of an illegal arrest." *Brown v. Illinois, supra* 422 U.S. at 603, 95 S.Ct. at 2261.[3]

The temporal proximity of the illegal seizure with the subsequent statements is critical in assessing the extent of attenuation. Where statements have been made almost simultaneously with an illegal arrest or came very shortly thereafter, they have been suppressed as fruits of the illegal police conduct. *Brown v. Illinois, supra* (statements made one and one-half hours after illegal arrest held inadmissible); *Wong Sun, supra* (appellant Toy's statement made at time of illegal arrest held to be "fruit" of the illegality).

On the other hand, where sufficient time has elapsed to indicate that the defendant's act of making a statement to the police has a less direct causal connection with the illegal conduct, statements have been admitted. *Wong Sun, supra* (appellant Wong Sun's statement made four days after illegal arrest held sufficiently attenuated). In this case, eight days passed between the time of the seizure of the goods from appellant and appellant's confession to the police. A time span of that length, longer than the four days held quite significant in *Wong Sun*, suggests that the attenuation between the seizure and the statements was sufficient to allow use of the statements as evidence.

Another element in evaluating the connection between the statements and the illegality is the purposefulness and flagrancy of the police conduct. *Brown, supra* at 605, 95 S.Ct. at 2262. Officer Meadows testified at the suppression hearing that at the time he seized the articles from appellant he did not believe he had probable cause to arrest. The record does not indicate, however, whether the officer knew

---

**3.** Since an arrest is a seizure of the person for purposes of Fourth Amendment analysis, the same principles enunciated in cases like *Wong Sun* and *Brown v. Illinois* are applicable where the illegal police conduct was a seizure of property. *See, e. g., Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

that probable cause to arrest was required in order to justify the seizure. *United States v. Pannell,* D.C.App., 383 A.2d 1078, 1079–80 (1978). His testimony reflects a belief that he was justified in seizing the goods, as contrasted with arresting the appellant, based on his perception that the articles were stolen. His action was not the type of flagrant misconduct which has supported previous findings of *no* attenuation when defendants have sought suppression of evidence obtained subsequent to improper police action.

In *Brown v. Illinois, supra,* statements by the appellant were suppressed when the court concluded that his dramatic arrest was obviously and concededly improper and appeared calculated to cause surprise, fright and confusion.[4] In this case, Officer Meadows' action does not indicate an obvious purpose to coerce or intimidate the appellant.

Finally, the Court has stressed that application of the exclusionary rule must be balanced against the cost to society when the use of certain evidence is disallowed. *See United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). "The penalties visited upon the government, and in turn the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve." *United States v. Ceccolini,* 435 U.S. 268, 279, 98 S.Ct. 1054, 1061, 55 L.Ed.2d 268 (1978). In this case, application of the exclusionary rule would exact a high price. Prosecution would be impossible once all physical evidence and appellant's incriminating statements were suppressed.[5]

On the basis of all these considerations, we conclude that it would be inappropriate to suppress the statements made by the appellant at the police station. We emphasize that the police did not exploit the illegally seized articles either to cause the appellant to come to the police station or to compel his confession. Appellant notes that "[h]ad the property not been seized, appellant would not have gone to the police station, been arrested or been questioned."[6] (Appellant's Brief at 25.) That contention misses the point in our view. The Court has rejected the use of any "but for" test in this area. *Wong Sun, supra* 371 U.S. at 488, 83 S.Ct. at 417. The issue is not whether there was *any* connection with the illegal police action, but instead the extent to which the connection is direct and significant.

In *Wong Sun,* had the appellant not been illegally arrested, he certainly would not have gone to the police station and given a confession. The Court found, however, that the link between his statements and the illegal arrest had become so attenuated that the statements could be used as evidence without offending the principles of the Fourth Amendment. The facts of this case indicate that the link between appellant's statements and the seizure was at least as attenuated as the connection in *Wong Sun* and that the statements were thus sufficiently independent of the primary taint to allow their use at trial.

▉ Appellant asserts that due to his mental condition his confession to the police

---

**4.** In *United States v. Edmons,* 432 F.2d 577 (2d Cir. 1970), cited in *Brown* as an example of purposeful or flagrant misconduct, the FBI arrested several suspects on a mere pretext when the sole purpose was to present them for identification to other agents who had been present at the scene of a crime.

**5.** There were no intervening circumstances in this case, another factor previously relied upon when evaluating attenuation. *E. g., Johnson v. Louisiana,* 406 U.S. 356, 365, 92 S.Ct. 1620, 1626, 32 L.Ed.2d 152 (1972) (defendant was brought before a magistrate, given his rights and bail, and represented by counsel before a lineup following illegal arrest); *Wong Sun, su-*

*pra* (appellant was arraigned and released on his own recognizance before giving statements after illegal arrest).

**6.** Whether appellant would have eventually been arrested and questioned even without his return to the police station is a matter of speculation. The police did have appellant's description and alleged residence and upon report of the burglary had probable cause to arrest him based solely on the information gained when appellant was initially stopped by Officer Meadows (*i. e.,* without use of the seized evidence).

was not voluntary. The voluntariness of a confession is to be judged on the totality of the circumstances. *Jackson v. United States*, D.C.App., 404 A.2d 911, 923 (1979). The trial court's determination on this issue will not be overturned unless it is without substantial support in the evidence. *Taylor v. United States*, D.C.App., 380 A.2d 989, 992 (1977).

The trial judge expressly found that appellant did not lack the ability to make a voluntary statement. The psychiatric testimony at trial indicated that appellant knew he was giving incriminating evidence and knew his statements could bear on imprisonment. The psychiatrist testified that he could not say how far below the norm appellant was in terms of his ability to make a voluntary statement and that there was no medical certainty that appellant felt compelled to make a statement. In the expert's view appellant may have been motivated by rational reasons when he stated that "[he] knew they had [him] and [he] guess[ed] he better talk." (Record at 21, 23). The record indicates that appellant was not an automaton totally indifferent; he initially refused to admit the burglaries. While there is conflicting evidence in the record, the trial court's finding that the confession was voluntary is a fair inference which we will not disturb.

■ Appellant also argues that his waiver of *Miranda* rights was not knowing, intelligent and voluntary due to his mental condition.[7] As with the issue of voluntariness of a confession, this court will not overturn the trial court's decision that a waiver of constitutional rights was valid unless it was made without substantial support in the evidence. *In re M.D.J.*, D.C. App., 346 A.2d 733, 735 (1975).

The trial court found that appellant understood his rights, answered all the questions on the PD 47 waiver card and had the capacity to knowingly and voluntarily waive his rights. No other evidence of police misconduct or other circumstances militating against waiver were presented. On evidence similar to that which supported the trial court's finding of voluntary confession, the record supports the determination that the waiver was valid.

■ The trial court did not err in finding a voluntary waiver by appellant of his *Miranda* rights based on a preponderance of the evidence standard. *Taylor v. United States, supra* at 992 n.6; *see Hawkins v. United States*, D.C.App., 304 A.2d 279, 282 (1973). Contrary to appellant's assertion, that standard is not invalid on the *Miranda* waiver issue because it is derived from *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), a case involving involuntary confessions. Prior to the *Lego* decision, the Supreme Court stated that a "heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona, supra* 384 U.S. at 475, 86 S.Ct. at 1628.

In *Lego*, the Court discussed the principle of excluding evidence at trial due to constitutional defects in the acquisition of the evidence, expressly including exclusion for failure to comply with the dictates of *Miranda*. The Court concluded that the rights guarded by the exclusionary rule would be sufficiently protected if the government demonstrated compliance with the constitutional requirements by a preponderance of the evidence.

Appellant notes that the Court recently said that "the courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). However, *North Carolina v. Butler* did not impose a more strin-

---

7. In *Miranda v. Arizona, supra*, the Supreme Court held that prior to custodial interrogation by the government, a defendant must be notified of and knowingly and intelligently waive his constitutional privilege against self-incrimination and his right to have counsel present during interrogation.

gent evidentiary burden on the government to prove that a defendant waived his rights; rather, the court held that a waiver may be inferred from a course of conduct and that an express waiver by the defendant is not required.

The Court reiterated the holdings of *Miranda* and *North Carolina v. Butler* in *Tague v. Louisiana*, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980), another case cited by appellant to suggest that a more rigorous evidentiary threshold must be met to demonstrate waiver. However, in *Tague* the Court's decision that waiver was not shown derived from its finding that "no evidence at all was introduced to prove that petitioner knowingly and intelligently waived his rights . . . ." *Id.* at 471, 100 S.Ct. at 653. *Tague* clearly does not demand that the government prove a waiver of *Miranda* rights by more than a preponderance of the evidence.

In no case has the Supreme Court enunciated an evidentiary burden for showing waiver of constitutional rights other than the preponderance of the evidence standard set forth in *Lego*. We are not persuaded that the rights outlined in *Miranda* are entitled to the greater protection of a more stringent evidentiary standard than that accorded other constitutional rights.

■ Having concluded that the trial court properly denied appellant's motion to suppress the statements he made to the police, there existed sufficient corroborative evidence to make appellant's confessions the basis of his convictions, even without use of the seized articles as evidence. *See In re J.F.T.*, D.C.App., 320 A.2d 322, 325 (1974); *Harrison v. United States*, D.C. App., 281 A.2d 222, 225 (1971). Officials of the parties burglarized, Bechtel, Inc., and Dynatrend, Inc., reported burglaries and specified the items stolen. The property of Dynatrend was recovered with pawn tickets obtained from and signed by appellant. Finally, Officer Meadows' testimony about his visual observation of the contents of the cart would not constitute a seizure within the meaning of the Fourth Amendment.[8] He would thus not be barred from identifying the articles he observed in appellant's shopping cart (which matched the property reported stolen from Bechtel) and describing the time and place of the encounter with appellant since that information was obtained during a valid investigation prior to any Fourth Amendment violation.[9] *See United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

Accordingly, the convictions must be affirmed.

*So ordered.*

NEWMAN, Chief Judge, concurring:

Though I join the court's opinion, it is not without misgivings that I subscribe to its conclusion that the quantum of proof by which the government must show a waiver of *Miranda* rights is a "preponderance of the evidence." The "preponderance" rule was first adopted by this court in *Hawkins v. United States*, D.C.App., 304 A.2d 279, 282 (1973) (citing *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972)). More recent Supreme Court cases, however, have characterized the government's burden of proof in *Miranda*-waiver determinations as "great," *Tague v. Louisiana*, 444 U.S. 469, 471, 100 S.Ct. 652, 653, 62 L.Ed.2d 622 (1980) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979)); "high," *Tague v. Louisiana, supra* 444 U.S. at 470, 100 S.Ct. at 652 (quoting *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966)); and "heavy," *id.* at 475, 86 S.Ct. at 1628 (*quoted in Tague v. Louisiana, supra* 444 U.S. at 470, 100 S.Ct. at 652) *and in*

---

**8.** Officer Meadow's authority to stop and question the appellant is not disputed. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

**9.** We emphasize that appellant was tried before the court, not a jury, so that assuming the physical evidence was seized in violation of the Fourth Amendment, any error in admitting them into evidence was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh. den.*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

*Fare v. Michael C.,* 442 U.S. 707, 724, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197 (1979), *and in North Carolina v. Butler, supra* 441 U.S. at 372, 99 S.Ct. at 1757; and as accompanied by a presumption against waiver, *Tague v. Louisiana, supra* 444 U.S. at 471, 100 S.Ct. at 653 (quoting *North Carolina v. Butler, supra* 441 U.S. at 373, 99 S.Ct. at 1757). Appellant contends that this language undercuts our holding in *Hawkins v. United States, supra.* And, indeed, I am not completely persuaded by the majority's grounds for distinguishing *Butler* and *Tague.* Nevertheless, while these cases may draw into question our *Hawkins* opinion, I am unable to discern a sufficient mandate from the Supreme Court's language to vitiate *Hawkins,* although the issue is not free from doubt.