Erving N. BOND, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 89–CF–1186.

District of Columbia Court of Appeals.

Argued Sept. 25, 1991.
Decided Sept. 15, 1992.

Jensen E. Barber, Washington, D.C., appointed by this court, for appellant.

William R. Cowden, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas J. Tourish, Jr., and Patricia A. Riley, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before TERRY, STEADMAN and FARRELL, Associate Judges.

FARRELL, Associate Judge:

Appellant was found guilty by a jury of three counts of kidnapping while armed (D.C.Code §§ 22–2101, –3202 (1989)); three counts of armed robbery (D.C.Code §§ 22–2901, –3202 (1989)); one count of assault with a dangerous weapon (D.C.Code § 22–502 (1989)); and two counts of carrying a pistol without a license (D.C.Code § 22–3204 (1989)).[1] He advances four grounds for reversal of all or some of his convictions: (1) the trial court's refusal to sever counts unfairly prejudiced his defense; (2) the court improperly admitted into evidence a signed confession obtained from appellant while he was in police custody; (3) the court lacked subject matter jurisdiction to try one of the armed robbery counts and one of the armed kidnapping counts; and (4) the court improperly admitted evidence of crimes not charged in the indictment. Appellant also contends that on the facts here the convictions for armed kidnapping merge into the armed robbery convictions. Only the severance and confession issues require more than summary discussion. We affirm.

## I.

The acts from which appellant's convictions resulted took place over a four day period and involved four separate victims.

### A. Fletcher Smith

According to the government's evidence, at eleven o'clock in the evening of October 30, 1988, Fletcher Smith was driving his car near 58th and Clay Streets, N.E., when he encountered appellant and an accomplice, Arnold Carter.[2] Pretending to need help in jump-starting their car, the two succeeded in entering Smith's car, where a

---

1. The jury acquitted appellant of two additional charges of armed robbery and one charge of assault with intent to kill while armed. It convicted him of assault with a dangerous weapon as a lesser included offense of the latter charge.

2. The indictment originally named Carter, a/k/a Michael Pitts, as a co-defendant in all of the counts for which appellant eventually stood trial. Carter pled guilty to various charges.

fight started. Smith managed to flee his car but several shots were fired, one striking him in the hip. Two and a half months later, police recovered another bullet from a car parked at the scene on the night of October 30; it had been fired from a silver .25 caliber pistol later found in Carter's possession on November 4, 1988. At trial Smith positively identified appellant as the man who had shot him, and the pistol taken from Carter as the weapon used by appellant on October 30. The jury found appellant guilty of assaulting Smith with a dangerous weapon and carrying a pistol without a license on October 30.

### B. Timothy Johnson

Three days later, after midnight, appellant and Carter approached Timothy Johnson in Jerry's Sub Shop, a carryout in Prince George's County, Maryland, just over the District of Columbia line. Appellant and Carter, whom Johnson did not know, asked him for a ride, but he declined, and they left the shop before him. When Johnson came out, the two were waiting for him in the parking lot. Carter had a handgun drawn and ordered Johnson to drive them to a nearby apartment complex. There the pair relieved Johnson of the contents of his pockets, including his automatic teller machine card, and ordered him to drive to an automatic teller machine, where appellant tried in vain to withdraw money from Johnson's account. Believing Johnson had not furnished the proper access code, appellant obtained the gun from Carter and shot Johnson in the back.

Despite the serious nature of the wound, the pair ordered Johnson to keep driving while they sought to use the card at various automatic teller locations, again in vain. Eventually, when the odyssey had taken them into the District of Columbia, Johnson became so weak he could no longer drive. Appellant put Johnson in the back of the car and began driving himself, in time returning to Maryland. There he and Carter again tried to operate an automatic teller machine using Johnson's card, and also robbed a crack cocaine dealer of his drugs and money. They returned to the District to smoke the cocaine and drive around a while longer, before abandoning Johnson and the car at an apartment complex on 58th Street, three-tenths of a mile from where they had assaulted Fletcher Smith three days earlier. Before leaving, they wiped the car clean of fingerprints and stole articles of clothing and cassette tapes from the vehicle. A short while later Carter came back and returned the car keys to Johnson, but Johnson was so weakened he could only drive the car a few feet. He attracted the attention of two passersby who summoned assistance.

At trial Johnson identified appellant as the man who had shot him, and the silver .25 caliber pistol seized from Carter as the weapon appellant used. A bullet removed from Johnson's body positively matched the gun. For his participation in these events, appellant was found guilty of armed kidnapping, armed robbery, and carrying a pistol without a license.

### C. Andre Williams

Late in the afternoon of the same day, Andre Williams was driving on Davy Street near the Capitol Heights bus station in Maryland when he met appellant doubled over in the street waving for help. When Williams stopped his car and lowered the window, appellant put a silver gun to his head and made him open the door. Williams complied and appellant and Carter jumped in. Appellant handed the gun to Carter and took Williams' designer-type "EK" sunglasses. Carter took Williams' wallet and, upon finding an ATM card in it, ordered him to drive to two 7–Eleven stores and a Sovran Bank in an effort to match the card with a machine it would operate. Failing in these attempts, the pair ordered Williams to drive to his own bank where, after yet another failed encounter with an automatic teller machine, they directed him to the drive-up window. When they discovered he had only seventeen dollars in his checking account, they ordered him to follow the car of a bank customer who had just made a withdrawal. He did so but they changed their mind and made him drive to another bank in Maryland, where they observed a customer, Lona Gray,

withdrawing funds at a drive-up window. They followed her to her home in Maryland and attempted to rob her at gunpoint as she left her car. Gray resisted by sitting on her purse, and the pair gave up the attempt when Gray's grandchild, who was in the car, began to cry.[3] Appellant and Carter then ordered Williams to drive them back to the District, ending up at a 7–Eleven store near Benning Road and East Capitol Street.[4] Seizing an opportunity, Williams escaped to a nearby restaurant, and appellant and Carter drove off in his car.

Williams identified appellant as one of the men who kidnapped and robbed him, and the gun seized from Carter on November 4 as the weapon with which the pair threatened him on November 3. The jury found appellant guilty of kidnapping Williams and of robbing him of his car, both while armed.

### D. Kenneth Fields

Finally, still on November 3, appellant and Carter arrived in Williams' car at another 7–Eleven near the intersection of Eastern Avenue and Sheriff Road, N.E. They watched Kenneth Fields withdraw money from an automatic teller machine inside the store. When Fields left the store, Carter put a gun in his back and ordered him to his car. Abandoning Williams' car, the pair got in with Fields and made him drive several blocks to another place in the District, where appellant took Fields' wallet containing his money and the ATM card he had just used. The pair decided to return to the 7–Eleven at Sheriff Road and Eastern Avenue where they knew there was a machine that would accept Fields' card. Fields was placed in the passenger seat and appellant drove. When they arrived at the 7–Eleven, neither appellant nor Carter could find the ATM card, resulting in an argument. Fields shrewdly suggested the card was somewhere in the back of the car, and when appellant began helping Carter search in the rear seat, Fields fled and ran into the 7–Eleven, where he called the police. Appellant and Carter left in Fields' car, but later that day appellant was photographed by a bank surveillance camera using Fields' ATM card in an attempted withdrawal. In the photograph he was wearing a pair of "EK" sunglasses, which he admitted at trial were the glasses he had gotten from Andre Williams. Fields' car was ultimately found abandoned on 61st Street in the District.

Fields identified appellant as one of the men who had robbed and kidnapped him, and the silver .25 caliber pistol taken from Carter on November 4 as the gun used by his assailants. For these actions, the jury convicted appellant of kidnapping while armed and armed robbery.

### II.

Appellant contends that, although the eleven counts for which he was tried were properly joined initially,[5] the trial court abused its discretion by not severing counts under Rule 14, Superior Court Rules of Criminal Procedure, and ordering three separate trials. We disagree.

Severance may be warranted under Rule 14 "if joinder prejudices any party." *Ray v. United States*, 472 A.2d 854, 856 (D.C. 1984). A motion for "[s]everance should be granted for offenses of similar character unless (1) the evidence as to each offense is separate and distinct, and thus unlikely to be amalgamated in the jury's mind into a single inculpatory mass, or (2) the evidence of each of the joined crimes would be admissible at the separate trial of the oth-

---

**3.** At trial Lona Gray testified about this attempted robbery over appellant's objection that it constituted improper evidence of an uncharged crime.

**4.** The government charged that the pair committed yet another armed robbery, of Reginald Grant, while Williams drove them around the District on November 3, but the jury acquitted appellant of that charge.

**5.** At oral argument in this court appellant abandoned his objection to the initial joinder of counts. The argument would fail in any event in light of the court's decision in *West v. United States*, 599 A.2d 788 (D.C.1991), upholding joinder on similar facts.

ers." *Cox v. United States*, 498 A.2d 231, 235 (D.C.1985) (citations and internal quotation marks omitted).[6] However, the decision to sever or not is committed to the sound discretion of the trial court, *Wright v. United States*, 570 A.2d 731, 734 n. 8 (D.C.1990), and to show an abuse of that discretion appellant must demonstrate that he suffered "the most compelling prejudice" from the joinder. *Arnold v. United States*, 511 A.2d 399, 404 (D.C.1986); *Winestock v. United States*, 429 A.2d 519, 527 (D.C.1981).

The trial court denied appellant's severance motion on the ground that evidence of each crime would be mutually admissible in separate trials. Appellant agrees that, on this basis, the crimes involving Andre Williams, Reginald Grant (see note 4, *supra*) and Kenneth Fields remained properly joined; that the crimes involving Timothy Johnson could be tried together; and that the offenses involving Fletcher Smith could also stay joined. The prejudice he claims was the amalgamation of the evidence of these three groupings of crimes. The government responds that the significant, and partly striking, similarities among the offenses would make evidence of each mutually admissible at separate trials on the issues of both identity and lack of criminal intent.[7]

In one sense the government is right that appellant's defense was lack of intent. He did not contest identity to the extent that he admitted he was in Carter's company when all of the crimes were committed. His defense in each case was innocent presence.[8] The government is also right that the sheer repetition of instances of admitted presence during robberies assertedly

committed by another tended to undercut appellant's defense of no involvement. "[E]vidence of another crime which tends to undermine defendant's innocent explanation for his act will be admitted; 'the oftener a like act has been done, the less probable it is that it could have been done innocently.'" J. WEINSTEIN & M. BERGER, 2 WEINSTEIN'S EVIDENCE, ¶ 404[12], at 404–84, 404–87 (1990) (citation omitted). *See Leasure v. United States*, 458 A.2d 726, 729 (D.C.1983) ("evidence of each crime would have been admissible in a separate trial ... to establish intent or, more precisely, the absence of innocent presence at the various stages of this criminal spree"). To prove intent, the prior criminal conduct generally "must involve an offense similar in kind and reasonably close in time to the charge at trial." *Willcher v. United States*, 408 A.2d 67, 76 (D.C.1979). The similarities discussed below readily satisfy this test. Nevertheless, unlike in the classic case where intent is in issue, appellant disputed that he "did" any of the charged criminal acts. Thus his defense of innocent presence resembles as much one of misidentification as lack of criminal intent. *See Thompson v. United States*, 546 A.2d 414, 422 (D.C.1988) ("[w]hen a defendant denies participation in the *conduct* which is alleged to constitute the crime, intent is ordinarily not a material issue for purposes of admitting other crimes evidence") (emphasis added). We therefore shall consider the mutual admissibility issue from the standpoint of identity.

The applicable standard is whether the crimes are "so nearly identical in method that it is likely that the present offense has been committed by the defendant." *Wright*, 570 A.2d at 734 (citations omitted).

---

**6.** The government does not dispute—indeed it affirmatively argues in connection with appellant's (now abandoned) Rule 8(a) argument—that the joined offenses were "of similar character."

**7.** The government also argues that the evidence of each offense was kept separate and distinct, and that various acquittals by the jury—in particular as to the Grant robbery—prove this point. But in view of our disposition and the fact that the trial judge did not rest his exercise of discretion (which is what we review) on this

ground, we do not reach the government's alternative argument.

**8.** The defense evidence was that appellant was asleep during the robbery of Reginald Grant; Andre Williams voluntarily gave appellant and Carter a ride and his "EK" sunglasses; appellant was in a store making a phone call when Carter robbed Fields; appellant ran away when Carter and Smith tangled; appellant was under the influence of cocaine during the Timothy Johnson abduction; and only Carter carried the weapon and shot two of the victims.

But the crimes need not share a single unique characteristic or "distinctive similarity," *id.;* "the court can consider the totality of the factual circumstances which[,] amalgamated, lay a sufficient basis for admission under the *Drew*[9] doctrine." *Id.* (quoting *Gates v. United States,* 481 A.2d 120, 123 (D.C.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985)). Ultimately there must be "enough points of similarity in the combination of circumstances surrounding the two crimes to create a reasonable probability that the same person committed each." *Id.* (quoting *Easton v. United States,* 533 A.2d 904, 908 (D.C.1987)).

That probability is established here. The government presented evidence of five armed robberies committed in four days, each by a pair of men one noticeably taller than the other. Nearly all took place within a narrow geographic compass. In each a distinctively recognizable silver handgun—identified by each victim as the one recovered from Carter—was used. *See Cox v. United States,* 498 A.2d 231, 238 (D.C.1985). All but one involved the forced entry of cars and subsequent robbery of the driver; the single exception was the robbery of a pedestrian from a car that had been commandeered from another robbery victim. And the perpetrators typically employed a ruse to approach their victims before pointing a gun at them.[10] Finally, appellant concedes the Williams, Grant, and Fields episodes were properly joined, but two of those shared with the Johnson robbery the distinctive use of ATM cards to attempt to gain access to the victim's bank account. All told, the similarities were sufficient "to create a reasonable probability that the same person," appellant, took part in each offense. *Wright,* 570 A.2d at 734. The judge properly exercised his discretion in denying the motion to sever. *Bridges v. United States,* 381 A.2d 1073, 1078 (D.C.

1977) ("when circumstance is added to circumstance there is a 'composite feature or mark' indicating that the four crimes were committed by the same person"), *cert. denied,* 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978); *Cox,* 498 A.2d at 238 ("evidence of each crime offered a real contribution to the crucial issue of identity").

## III.

### A.

■ Before trial, appellant moved to suppress a statement he had given to a police detective on January 15, 1989, in which he admitted that during the previous months he had committed approximately ten robberies to pay for his cocaine habit, and confirmed many of the details of the kidnappings, robberies and shootings alleged in this case. After a hearing, the trial court ruled that appellant had knowingly and intelligently waived his *Miranda*[11] rights *four* times after his arrest, and that the statement was voluntarily given. Appellant renews his contention that he did not confess voluntarily (or that his waiver of *Miranda* rights was not knowing and voluntary) and that the statement was taken in violation of D.C.Code § 4–140 (1988) and 18 U.S.C. § 3501 (1988).

The trial court took testimony from three police officers in whose presence appellant had read and signed PD–47 waiver of rights cards three separate times after his rights were read to him. Appellant also testified at the hearing. According to the officers, appellant was arrested on Saturday, January 14, 1989, at 2:00 a.m., during a raid on a crack-cocaine establishment. He gave a false name when arrested and when he signed the first waiver of rights card approximately an hour later. When he also claimed he did not remember his social security number, the police became

---

**9.** *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

**10.** In the Reginald Grant episode, as to which appellant was acquitted, the government's evidence showed that the pair hailed Grant by pretending to ask whether he knew where Carter could buy drugs. Timothy Johnson was approached and asked for a ride. Fletcher Smith was asked to help start a car, and appellant feigned injury to induce Andre Williams to stop his vehicle.

**11.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

suspicious of his identity. At 9:50 a.m., after they learned his true identity, he signed another waiver of rights form before a different officer. He was not questioned about crimes on either of these two occasions, nor during the interim period when the police were trying to learn his identity. Detective Muldoon, the second officer to whom he waived his rights, advised him that the police had learned who he was and that a warrant was outstanding for his arrest on armed robbery charges. With appellant's consent, Muldoon attempted to make an appointment for the next day for appellant to talk with the officer in charge of the armed robbery investigation, Detective Wagner. Wagner asked Muldoon to see first if appellant could make the deadline for Saturday presentment in court.[12] Muldoon called the court lockup at 10:30 a.m. and learned that appellant could not make the cut-off. He called Wagner back and confirmed the appointment for the next day.

At 11:35 a.m. on Sunday, appellant again waived his rights by signing a PD–47 card. This time he also gave a statement which Detective Wagner typed and appellant signed. On the form used for taking the statement, appellant wrote "yes" in answer to questions about whether he wished to waive his rights and give a statement. He was presented in court the following day at about 4:00 p.m., some 62 hours after his arrest.

Appellant testified that he was under the influence of cocaine when he signed the first waiver, and that Officer Jones, the booking officer, had promised him a citation release and a job as an informant. He further testified that he had had no sleep when he signed the second waiver, and that in the third instance Detective Wagner grabbed him by the neck, threatened him with further physical abuse, and coerced him into signing a typed statement Wagner

had composed. He also said that in giving him the rights card to sign Wagner told him it was a receipt. He admitted on cross-examination that he had lied about his identity when first arrested and booked, that he could read and write and had a GED certificate, that he previously been in the Youth Center on criminal charges, and that he knew the "receipt" Wagner gave him to sign was a rights waiver card and "pretty much knew what it said" without reading it. He conceded that neither Jones nor Muldoon had attempted to interrogate him on the first two occasions when he waived his rights, and that he had agreed to talk to Detective Wagner when he was interviewed by Muldoon.

In denying the motion to suppress, the trial judge considered the demeanor of the witnesses, appellant's apparent degree of sophistication, his interest in suppressing the confession, the fact that he had had the presence of mind to lie about his identity when arrested, the fact also that he was not interrogated by the first two officers (neither of whom claimed he had made any admissions), and especially the testimony of appellant, Muldoon, and Wagner all confirming that appellant had agreed to be interviewed by Wagner. Crediting the officers' testimony, the judge found that appellant had knowingly and intelligently waived his rights and that his confession was voluntary in fact.[13] As there is substantial support in the record for these conclusions, *Cowan v. United States,* 547 A.2d 1011, 1014–15 (D.C.1988); *Catlett v. United States,* 545 A.2d 1202, 1208–09 (D.C.1988), we sustain them.

**B.**

■ Appellant argues that the delay of thirty-six hours between his arrest and confession violated his right to a prompt presentment under Rule 5(a) of the Superior

---

**12.** The trial court took judicial notice of the fact that defendants at that time had to be in the courthouse lock-up by 11:00–11:30 a.m. to be presented on Saturday, and that court was not in session on Sunday.

**13.** The judge found "no believable evidence whatsoever that [appellant] was under the influ-

ence of any narcotics at the time that he actually incriminated himself," and that even if he had "exhibit[ed] some symptomatology in that regard" when earlier advised of his rights, "even then he understood and had his faculties about him."

Court Rules of Criminal Procedure, and required suppression of the statements under D.C.Code § 4–140, and 18 U.S.C. § 3501.

Super.Ct.Crim.R. 5(a) provides that an arresting officer "shall take the arrested person without unnecessary delay before the Court." We have held that a confession obtained during a period of unnecessary delay is inadmissible in evidence. *Bliss v. United States*, 445 A.2d 625, 633 (D.C.) (citing *Mallory v. United States*, 354 U.S. 449, 450–56, 77 S.Ct. 1356, 1357–60, 1 L.Ed.2d 1479 (1957), and *McNabb v. United States*, 318 U.S. 332, 341–45, 63 S.Ct. 608, 613–15, 87 L.Ed. 819 (1943)), *amended on other grounds*, 452 A.2d 172 (D.C.1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 756, 74 L.Ed.2d 972 (1983). But we have further held, repeatedly, that "a valid waiver of an individual's *Miranda* rights is also a waiver of his *Mallory* right to presentment without unnecessary delay." *Id.* at 633; *United States v. Greene*, 592 A.2d 985, 987 n. 2 (D.C.1991), *cert. granted on other grounds*, —— U.S. ——, 112 S.Ct. 1935, 118 L.Ed.2d 542 (1992); *Hawthorne v. United States*, 504 A.2d 580, 587 n. 17 (D.C.), *cert. denied*, 479 U.S. 992, 107 S.Ct. 593, 93 L.Ed.2d 594 (1986); *Woodson v. United States*, 488 A.2d 910, 914 n. 4 (D.C.1985); *Hawkins v. United States*, 304 A.2d 279, 281 (D.C.1973). In *Bliss*, in particular, the defendant's confession took place more than twelve hours after his arrest but after he had validly waived his *Miranda* rights several times; we upheld the admission of his voluntary statements. *Bliss* cannot be distinguished in principle from this case, in which appellant waived his *Miranda* rights not once, but on three separate occasions before confessing.[14]

Appellant argues that in none of these decisions was the court asked to consider the effect of D.C.Code § 4–140 or 18 U.S.C. § 3501 on the delay in presentment and hence admissibility of the statements. That may be so, but it is surely doubtful we would have adhered to the waiver rule over some eighteen years (at least since *Hawkins*[15]) if either of these statutes contradicted it. Neither does. D.C.Code § 4–140(a) authorizes the questioning of an arrestee "for a period not to exceed 3 hours immediately following his arrest." Section 4–140(b) provides that "any statement ... made by an arrested person within 3 hours immediately following his arrest shall not be excluded from evidence ... solely because of delay in presentment." Appellant asserts that the "logical corollary to this provision is that a statement made by an arrested person outside of this three hour parameter *shall* be excluded from evidence." But the statutory language does not dictate this conclusion, and the drafters explained otherwise:

> [T]itle III [of the District of Columbia Crime Bill of 1967, of which D.C. Code § 4–140 is part, is not] intended to prohibit the admissibility in evidence of all statements made after the 3–hour period has expired. Such statements will not be

---

**14.** At oral argument appellant asserted that the initial *Miranda* waiver was only effective as to the charges for which he had been arrested (drug charges), and thus was a waiver of prompt presentment only as to those charges. In *Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987), however, the Supreme Court held that the validity of a *Miranda* waiver is not dependent on the suspect's awareness of what the subject matter of the interrogation will be. *Id.* at 577, 107 S.Ct. at 859; *cf. Beasley v. United States*, 512 A.2d 1007, 1013 (D.C.1986), *cert. denied*, 482 U.S. 907, 107 S.Ct. 2485, 96 L.Ed.2d 377 (1987) (extent of suspect's understanding of what the subject matter of the interrogation will be is only one factor to be considered in determining validity of *Miranda* waiver). After *Spring*, the *Miranda* waiver must be regarded as a waiver of a prompt presentment on all pending charges. *But cf. Woodson v. United States*, 488 A.2d at 914 n. 4 (pre-*Spring* dictum that *Miranda* waiver includes waiver of *Mallory* right as to same offense). In any event, appellant was not interrogated after the first waiver, and long before he confessed he knew that he was going to be questioned about the armed robberies.

**15.** *Hawkins* relied on *Pettyjohn v. United States*, 136 U.S.App.D.C. 69, 419 F.2d 651 (1969), *cert. denied*, 397 U.S. 1058, 90 S.Ct. 1383, 25 L.Ed.2d 676 (1970), in which the court had held "that appellant, by validly waiving his *Miranda* right to silence and an attorney, and by agreeing to speak with the police, has thereby also waived any *Mallory* right to be brought before a magistrate 'as quickly as possible.'" *Id.* at 74, 419 F.2d at 656 (quoting *Mallory*, 354 U.S. at 454, 77 S.Ct. at 1359).

protected by Title III, but they may still be admitted in evidence so long as they were obtained with full regard for the constitutional and other rights of the arrested person, including his rights under rule 5(a) and the *Mallory* decision. The committee specifically intends that the phrase "unnecessary delay" [in Rule 5(a)] will be given an interpretation that is fair in all the circumstances and title III is not to be invoked to bar all statements obtained after the 3–hour period. S.REP. No. 912, 90th Cong., 1st Sess. 17 (1967).

Furthermore, D.C.Code § 4–140 must be read in harmony with subsequently enacted 18 U.S.C. § 3501.[16] That statute provides that "[i]n any criminal prosecution brought by the United States or by the District of Columbia, a confession ... shall be admissible in evidence if it is voluntarily given." § 3501(a). Subsection (b) states that "[t]he trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, *including* (1) the time elapsing between arrest and arraignment of the defendant making the confession" (emphasis added), as well as the advice (or lack thereof) which the defendant was given of his *Miranda* rights. Subsection (b) stresses that "[t]he presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession." And subsection (c), focusing specifically on delay in presentment, restricts the power of the court by providing that a confession "shall not be inadmissible solely because of delay in bringing [a defendant] before a magistrate ... if such confession is found by the trial

judge to have been made voluntarily and ... such confession was made or given by such person within six hours immediately following his arrest or other detention." [17]

Thus, 18 U.S.C. § 3501 plainly directs the admissibility analysis to "the issue of voluntariness of the confession" and provides that, as relevant to this case where the delay exceeded six hours, the trial court was obliged to consider as one factor—though it "need not be conclusive"—the time elapsing between appellant's arrest and presentment. "[T]he prime purpose of Congress in the enactment of § 3501 was to ameliorate the effect of the decision in *Mallory* ... to remove delay alone as a cause for rejecting admission into evidence of a confession...." *United States v. Halbert*, 436 F.2d 1226, 1231 (9th Cir.1970); *see United States v. Poole*, 161 U.S.App. D.C. 289, 294, 495 F.2d 115, 120 (1974), *cert. denied*, 422 U.S. 1048, 95 S.Ct. 2667, 45 L.Ed.2d 701 (1975); *id.* at 298, 495 F.2d at 124 (Leventhal, J., concurring). Under the statute, "[t]he extent and nature of a suspect's detention may ... be taken into account, as part of the totality of pertinent circumstances, in determining whether a confession was inadmissible for lack of voluntariness [in fact]" or voluntariness of the *Miranda* waiver. *Id.* at 294, 495 F.2d at 120. *See also Thomas v. United States*, 351 A.2d 499, 501 n. 4 (D.C.1976) ("any statement admissible under the standards required in *Miranda* ... would also meet the standards of § 3501"); *United States v. Jackson*, 712 F.2d 1283, 1286 (8th Cir. 1983); *United States v. Shoemaker*, 542 F.2d 561, 563 (10th Cir.), *cert. denied*, 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976).[18]

---

**16.** Super.Ct.Crim.R. 5(a) expressly states that "[t]his Rule shall not be construed to conflict with or otherwise supersede section 3501 of Title 18, United States Code."

**17.** The "safe harbor" against exclusion for delay alone may extend beyond six hours if the additional delay "is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer." § 3501(c).

**18.** Besides the appointment of counsel (waivable under *Miranda*), an additional reason for Rule 5's requirement of prompt presentment of one arrested without a warrant is to insure that an initial determination of probable cause is made by a judicial officer before the suspect's liberty has been restrained significantly. Super.Ct.Crim.R. 5(c) & Comment; *Mallory*, 354 U.S. at 454, 77 S.Ct. at 1359; *see also Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). That concern is not implicated here since appellant had been indicted for numerous offenses before his arrest and hence probable

Of course, "[t]he government's reliance on the waiver of *Miranda* rights becomes weaker as the period of pre-arraignment detention increases." *United States v. Wilson,* 838 F.2d 1081, 1087 (9th Cir.1988). *See Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 491, 112 L.Ed.2d 489 (1990) (noting "the coercive pressures that accompany custody and that may increase as custody is prolonged"). Appellant confessed nearly thirty-six hours after his arrest, undeniably a substantial length of time. But, as explained earlier and as the trial judge emphasized, appellant waived his *Miranda* rights three separate times during this period, yet was questioned on only the single occasion when he confessed to Detective Wagner. *See United States v. Marrero,* 450 F.2d 373, 376 (2d Cir.1971) ("It is not the lapse of time but the use of the time . . . to employ the condemned psychologically coercive . . . practices which is

proscribed by the cases"), *cert. denied,* 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972). Furthermore, the judge found the delay to be reasonable (pointing out that it could not be viewed "in the vacuum"), especially since it originated in appellant's falsification of his identity [19] and the resultant inability (after booking) to get him to court before the Saturday morning cutoff.

 The trial judge correctly concluded that the duration of the custody did not affect the totality of circumstances demonstrating appellant's voluntary waiver.[20]

The judgment of the Superior Court is *Affirmed.*

---

cause to hold him had been indisputably established. *Gerstein,* 420 U.S. at 117 n. 19, 95 S.Ct. at 865; *United States v. Davis,* 330 A.2d 751, 753 n. 5 (D.C.1975); *see* Super.Ct.Crim.R. 5(d)(2). Moreover, though appellant was not arrested initially pursuant to the warrant resulting from that indictment, the later discovery of the warrant—more than twenty-four hours before he confessed—nullified the possibility that the police delayed presentment for the prohibited purpose of obtaining evidence to establish probable cause. *See Mallory,* 354 U.S. at 454, 456, 77 S.Ct. at 1360; *United States v. Yunis,* 273 U.S.App.D.C. 290, 306, 859 F.2d 953, 969 (1988); *see also County of Riverside v. McLaughlin,* — U.S. —, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49 (1991).

Appellant points as well to the *post*-confession delay in bringing him before the court, caused in part by the fact that court was not in session on Sundays. But "[a]t best, [a defendant can] move only to suppress evidence gained *by reason* of the delay." *Holt v. United States,* 381 A.2d 1388, 1389 n. 1 (D.C.1978) (emphasis added); *Pettyjohn, supra,* 136 U.S.App.D.C. at 74, 419 F.2d at 656 (post-confession delay, even if unreasonable, "cannot retroactively vitiate an otherwise valid confession"). *See United States v. Mitchell,* 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944).

19. *See Proctor v. United States,* 119 U.S.App.D.C. 193, 338 F.2d 533 (1964), *cert. denied,* 380 U.S. 917, 85 S.Ct. 910, 13 L.Ed.2d 802 (1965).

20. We reject appellant's jurisdictional and merger arguments, as well as the contention that the admission of Lona Gray's testimony about the uncharged attempt to rob her was prejudicial

error. Citation to *Jordan v. United States,* 350 A.2d 735 (D.C.1976), is enough to dispose of the claim that no part of the armed robbery of Timothy Johnson took place in the District of Columbia. Similarly, the armed kidnapping of Johnson continued while the captors twice drove into the District of Columbia. *See* D.C.Code § 22–2101 (second sentence); *Mitchell v. United States,* 569 A.2d 177 (D.C.), *cert. denied,* — U.S. —, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990); *Robinson v. United States,* 501 A.2d 1273 (D.C.1985). Moreover, as to each of the three armed kidnappings, it cannot be said that the acts of seizing and asporting the victim were "merely incidental to another crime, and thus an integral part of it," *Nelson v. United States,* 601 A.2d 582, 598 (D.C.1991), necessitating merger. Given the length and circumstances of the detention in each case, the kidnappings were not "approximately coextensive in time and place" with the armed robberies, *Catlett v. United States,* 545 A.2d 1202, 1215 (D.C.1988), *cert. denied,* 488 U.S. 1017, 109 S.Ct. 814, 102 L.Ed.2d 803 (1989), and thus constituted separate criminal acts. *Id.*

Finally, assuming for argument's sake that the trial court erred in admitting Lona Gray's testimony under *Toliver v. United States,* 468 A.2d 958 (D.C.1983); *see Parker v. United States,* 586 A.2d 720, 724 (D.C.1991), any error was harmless in view of the overwhelming evidence of guilt, including identification of appellant by each victim at trial (and by all but one before trial), and appellant's confession to each crime to the police. *Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946).