**Cullen A. BYRD, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CF–917.**

District of Columbia Court of Appeals.

Argued Oct. 26, 1992.
Decided Oct. 30, 1992 *.

* The decision in this case was originally released as a Memorandum Opinion and Judgment on October 30, 1992. It is now being published by direction of the court with minor editorial changes.

Brian K. Pearlstein, with whom Chal-frantz E. Perry and Frederick A. Douglas, Washington, DC, were on the brief, for appellant.

Robert J. Meyer, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and June M. Jeffries, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before FERREN, SCHWELB, and KING, Associate Judges.

FERREN, Associate Judge:

After a bench trial, the trial court found appellant Cullen Byrd guilty of first-degree burglary with intent to steal, D.C.Code § 22–1801(a) (1989 Repl.), two counts of felony murder, D.C.Code § 22–2401 (1989 Repl.), two counts of second-degree murder, D.C.Code § 22–2403 (1989 Repl.), three counts of second-degree burglary, D.C.Code § 22–1801(b) (1989 Repl.), first-degree theft, D.C.Code §§ 22–3811 and –3812(a) (1989 Repl.), unauthorized use of an automobile, D.C.Code § 22–3815 (1989 Repl.), trafficking in stolen property, D.C.Code § 22–3831 (1989 Repl.), and pos-

session of drug paraphernalia, D.C.Code § 33–603(a) (1988 Repl.). He now appeals, claiming that (1) the trial court erred in not suppressing his confession, and (2) there was insufficient evidence to support his convictions for (a) first-degree burglary and, consequently, felony murder, (b) second-degree burglary, and (c) one of the two second-degree murder counts.[1] For the reasons given below, we reject appellant's arguments. With regard to appellant's convictions for first-degree burglary, felony murder, and second-degree murder, we remand this case to the trial court to enable it to effectuate its sentencing scheme without violating the Double Jeopardy Clause. In all other respects, we affirm the judgment on appeal.

## I.

On June 15, 1989, the bodies of Holly Kincaide and her daughter Kristin were discovered in their home at 1429 Whittier Street, N.W., Washington, D.C. Holly Kincaide's body was found underneath her bed; Kristin's body was in the bathroom, where it was lying, clothed, in a tub with ten and three-quarter inches of water in it. The Kincaide home was in great disorder and there was blood on the bed and wall of the master bedroom. A basement door had been splintered. Holly Kincaide's car was also missing.

A medical examiner later determined that Holly Kincaide had died from blunt force injuries to the head and face. Her daughter's death had been caused by blunt force injuries to her head and perhaps by submersion in water as well. There was a contusion to Kristin's right eye, suggesting an impact to that eye, and a hemorrhage of the entire right side of the scalp. These injuries were consistent with Kristin's having been punched once in the eye and having fallen back and struck her head against something.

At some point between 7:00 and 7:30 a.m. on June 16, 1989, police arrested appellant

---

**1.** Appellant did not challenge his convictions for the second-degree murder of Holly Kincaide, trafficking in stolen property, and possession of drug paraphernalia. Although he initially con-

tested his convictions for first-degree theft and unauthorized use of a motor vehicle as violating the Double Jeopardy Clause, appellant withdrew this claim at oral argument.

and a companion after finding them sleeping in Holly Kincaide's car. Appellant was given verbal *Miranda*[2] warnings and was taken to Metropolitan Police Department Headquarters. Detectives did not begin speaking with appellant until 1:18 p.m. They advised him orally of his rights and he agreed to answer questions. After questioning had proceeded for some time, appellant confessed to murdering Holly and Kristin Kincaide. He was again advised of his rights and signed a written waiver at 2:30 p.m. After further questioning, the detectives proceeded to videotape appellant's confession, beginning at about 4:30 p.m. After concluding his statement, in which he admitted responsibility for the deaths of Holly and Kristin Kincaide, appellant said that he had not been placed under duress during the questioning, and that he was not under the influence of alcohol or drugs. He added, however, that he was worn out from having only had a nap and four to five hours of sleep the night before. Appellant was not presented in Superior Court until the following day.

Appellant later moved to suppress his videotaped confession. On August 6, 1990, Judge Greene denied appellant's motion. Appellant renewed the motion on different grounds, and Judge Eilperin heard and denied it on April 16, 1991.

At trial the videotape was admitted into evidence and was played for the court. In addition, the government presented ample incriminating evidence at trial, including fingerprints proving that appellant had been in the Kincaide home and testimony that he had removed items from the home and sold them to purchase crack cocaine.

## II.

Appellant asserts that the trial court erred in denying his motion to suppress his videotaped confession. He argues that the confession should have been suppressed because (1) the government failed to interview appellant for over six hours after his arrest and did not present him to the court until the following day, and (2) appellant's confession was not voluntary.

■ In making the first claim, appellant relies on the so-called "McNabb–Mallory Rule," which requires suppression of a confession obtained during a period of unnecessary delay before taking the defendant before a court for arraignment. *See Mallory v. United States*, 354 U.S. 449, 450–56, 77 S.Ct. 1356, 1357–60, 1 L.Ed.2d 1479 (1957); *McNabb v. United States*, 318 U.S. 332, 341–45, 63 S.Ct. 608, 613–15, 87 L.Ed. 819 (1943); *Bliss v. United States*, 445 A.2d 625, 633, *modified on other grounds*, 452 A.2d 172 (D.C.1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 756, 74 L.Ed.2d 972 (1983). As the trial court noted in denying appellant's motion to suppress, however, we have held that a valid waiver of *Miranda* rights also constitutes a waiver of the right to prompt presentment before a court. *See Bond v. United States*, 614 A.2d 892, 899 (D.C.1992); *Hawthorne v. United States*, 504 A.2d 580, 587 n. 17 (D.C.), *cert. denied*, 479 U.S. 992, 107 S.Ct. 593, 93 L.Ed.2d 594 (1986); *Bliss*, 445 A.2d at 633. *See also Pettyjohn v. United States*, 136 U.S.App.D.C. 69, 419 F.2d 651 (1969), *cert. denied*, 397 U.S. 1058, 90 S.Ct. 1383, 25 L.Ed.2d 676 (1970).

■ Appellant argues here that while he said he understood his *Miranda* rights, he did not execute a knowing, intelligent, and voluntary waiver of those rights, because he was subjected to prolonged questioning while suffering from lack of sleep and the effects of recent drug use. The trial court reviewed this claim and found that appellant's waiver of his rights was knowing, intelligent, and voluntary. The trial court found no evidence that appellant was under the influence of drugs or alcohol or that he was unduly tired when he gave his statement. We will not overturn the trial court's findings of fact on this issue unless they are without substantial support in the evidence. *Hawthorne*, 504 A.2d at 586; *Bliss*, 445 A.2d at 631. We conclude that there is ample evidence in the record to support the judge's finding that appellant's waiver of his rights was voluntary.

**2.** *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ As to the question of whether appellant's confession was voluntary, we must undertake our own independent review, insofar as this is a question of law and not just of fact. *See Hawthorne*, 504 A.2d at 586 (citing *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)). We must decide "whether, under the totality of the circumstances, the will of appell[ant] was 'overborne in such a way as to render his confession the product of coercion.'" *United States v. Thomas*, 595 A.2d 980, 981 (D.C.1991) (quoting *Arizona v. Fulminante*, —— U.S. ——, ——, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302, 317 (1991)). In addition to examining the factors specified in 18 U.S.C. § 3501 (1988),[3] we will consider "the individual's prior experience with the legal system, the circumstances of the questioning, [and] any allegation of coercion or trickery resulting in a confession." *Bliss*, 445 A.2d at 631.

■ On our review of the record, we conclude that appellant's confession was voluntary. Appellant was advised of his rights three times during the day of his arrest and signed a written waiver of those rights before he gave the videotaped confession. The detectives who examined appellant were in no way threatening or coercive toward him. Indeed, the judge who first heard appellant's suppression motion characterized the interview as "one of the most fair, effective, gentle interviews" he had ever seen conducted by police. Appellant was given cigarettes, cookies, and a soft drink. The trial court found no evidence that appellant was under the influ-

ence of drugs. We have no indication as to whether appellant had prior experience with the justice system. It is true that there was an extraordinarily long delay between the time appellant was arrested and the time he was first interviewed, and still more time passed before he finally gave his confession. But there is no evidence that this delay was either intended to coerce or actually had the effect of coercing appellant's testimony. Indeed, in all other respects the detectives appear to have conducted appellant's interrogation in an exemplary manner. In the absence of other factors indicating coercion, we will not conclude that appellant's confession was involuntary simply on the basis of the delay between his arrest and the time of his interview. *See Bond*, 614 A.2d at 901 (confession given nearly thirty-six hours after arrest was not inadmissible).[4]

### III.

Appellant challenges several of his convictions on grounds of insufficient evidence. We review the evidence in the light most favorable to the government, considering the factfinder's right to weigh the evidence, draw all reasonable inferences from the facts, and determine the credibility of the witnesses. *Jones v. United States*, 548 A.2d 35, 48 (D.C.1988).

### A.

■ Appellant argues, first, that the government failed to establish beyond a reasonable doubt that appellant initially en-

---

3. Under 18 U.S.C. § 3501(b), "The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance

of counsel when questioned and when giving such confession."

4. In arguing that his confession should be suppressed because of the delay involved, appellant also points to D.C.Code § 4–140(a) (1981), which provides: "Any person arrested in the District of Columbia may be questioned with respect to any matter for a period not to exceed 3 hours immediately following his arrest." But as we recently observed in *Bond*, 614 A.2d at 900, D.C.Code § 4–140 must be construed in harmony with 18 U.S.C. § 3501, which provides that "The presence or absence of any of the ... factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession."

tered the Kincaide apartment with the intent to steal and that, therefore, appellant's conviction for first-degree burglary and the related convictions on two counts of felony murder should be reversed. On this point, the trial court found that appellant "had formed a plan before going into that house that he wanted to take all the things that she had and convert those things into barter for cocaine which is essentially what he did after Holly Kincaide's death." There is ample evidence in the record to support this finding. A friend of Holly Kincaide testified that he had talked to Cullen Byrd and another youth about helping Ms. Kincaide with a move that she was planning. Sometime at the end of May or the beginning of June 1989, this friend borrowed a key to the Kincaide home and then brought Byrd and his companion there to show them what needed to be moved. Appellant admitted breaking in a basement door to gain entry to the house. And there was testimony that appellant had removed items from the Kincaide home and sold them.

### B.

◼ Second, appellant claims that there is insufficient evidence to support his three separate convictions for second-degree burglary. Appellant's counsel conceded at oral argument that there is sufficient evidence of three separate entries into the Kincaide home following the initial entry. Appellant asserts, however, that because he exercised "dominion and control" over the house during the time that he removed and sold items, there was only a single intent and a single transaction and thus the convictions must be merged. We disagree. Appellant's reliance on our previous decisions in *Stewart v. United States*, 490 A.2d 619 (D.C.1985), and *Thorne v. United States*, 471 A.2d 247 (D.C.1983), is misplaced. In both of those cases the trial court had convicted the defendant of multiple burglary counts where there had been only a single entry, on the ground that the defendant harbored the intent to commit more than one offense at the time of entry. On appeal we reversed, holding that the harboring of an intent to commit more than

one crime does not constitute an additional fact for purposes of merger analysis. In the present case, by contrast, we are concerned with actual multiple entries. In effect, appellant would have us hold that multiple entries into a dwelling with intent to steal merge into a single offense when the burglar has managed to obtain complete control over the home by murdering its occupants. We decline to do so. "[N]o one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." *Stearns Co. v. United States*, 291 U.S. 54, 61–62, 54 S.Ct. 325, 328, 78 L.Ed. 647 (1934).

### C.

◼ Finally, appellant argues that there is insufficient evidence to support his conviction for the second-degree murder of Kristin Kincaide, because the government failed to produce evidence of the requisite malice. *See Comber v. United States*, 584 A.2d 26, 38–39 (D.C.1990). The trial court found that this element was supplied by appellant's specific intent to inflict serious bodily harm on the child, as evidenced by the fact that appellant, a 27–year–old man, directly struck Kristin, an eight-year-old girl who weighed approximately 50 pounds, hitting her eye with his fist. If Kristin did not die as a result of that blow alone, then additional evidence of appellant's malice could be found in the fact that he drowned her in the water in the bathtub. There is sufficient evidence in the record to support the trial court's findings.

### IV.

◼ In accord with our recommended practice, *see Garris v. United States*, 491 A.2d 511, 513–14 (D.C.1985), the trial court sentenced appellant on several convictions—those for first-degree burglary, felony murder, and second-degree murder—which would merge if all stood after review. Accordingly, we remand this case to allow the trial court to vacate certain of those convictions and resentence appel-

lant.[5]  In all other respects the judgment on appeal is hereby affirmed.

*So ordered.*

---

**5.** The trial court has two choices: either it may vacate the felony murder convictions, allowing appellant's first-degree burglary and second-degree murder convictions to stand, or, vice versa, it may vacate the first-degree burglary and second-degree murder convictions, allowing appellant's felony murder convictions to stand.