UNITED STATES, Appellant,

v.

Jasmine A. BELL, Appellee.

No. 98–CO–1610.

District of Columbia Court of Appeals.

Argued June 10, 1999.
Decided Nov. 4, 1999.

Before STEADMAN, RUIZ and REID, Associate Judges.

STEADMAN, Associate Judge:

In this pretrial government appeal, we review the trial court's suppression of an audiotaped statement given to the police by appellee Jasmine Bell. Slightly less than six hours after his arrest, Bell signed a card waiving his Miranda[1] rights. Under our case law, that waiver also constituted a waiver of his right under Super. Ct.Crim. R. 5(a) to prompt presentment after the arrest. Bell was then questioned by the police and ten hours later gave the taped statement, incorporating what he had told the police during the questioning period. Presentment, however, did not occur until an additional thirty-eight hours had passed (caused in part by a fire that resulted in the closing of the courthouse). Because the trial judge erroneously concluded that the delay in presentment rendered Bell's statement involuntary as a matter of law, we reverse the suppression.

## I.

Bell, along with two co-defendants, was indicted for first-degree murder and related charges. In a pretrial motion, Bell sought to suppress a taped statement (not a confession but, for the most part, an alibi claim) that he had given to the police. After a four-day hearing, the trial court granted the motion in an extensive oral ruling from the bench. The government took a timely expedited appeal to this court pursuant to D.C.Code § 23–104(a)(1)(1996).

### A.

The only two witnesses at the suppression hearing were Detective Konstantinos Giannakoulias, a Metropolitan Police Department (MPD) detective who was investigating the shooting death, and Bell himself. Bell had been identified as a suspected shooter and a warrant had been

John R. Fisher, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and Oscar S. Mayers, Kathleen S. Davies and Anthony S. Barkow, Assistant United States Attorneys, were on the brief, for appellant.

Howard F. Bramson, E. Brunswick, NJ, appointed by the court, for appellee.

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

issued for his arrest. Detective Giannakoulias then gave the following testimony about the ensuing events.

On January 28, 1998, Detective Giannakoulias was in court on an unrelated matter when he was notified at 2:00 p.m. that Bell had turned himself in to the MPD's Seventh District and had been placed under arrest. When Detective Giannakoulias returned to the Seventh District at approximately 4:00 p.m. that afternoon, he saw Bell sitting handcuffed to a chair in the main office area of the homicide office. Bell did not appear to be in any discomfort, he was not crying, and he did not appear to be physically injured.

Detective Giannakoulias told Bell that he was under arrest on a warrant and explained that the police would "advise [Bell] of his rights" and give him a chance to speak with them "if he wanted to" after he prepared some paperwork. At 4:20 p.m., in the presence of Detective Giannakoulias, another detective advised Bell of his *Miranda* rights. Bell's handcuffs were removed and he was not restrained in any way for the rest of the time he spent at the Seventh District. Bell signed the usual PD–47 form indicating that he was waiving his *Miranda* rights and that he was willing to answer questions without an attorney.

After Bell signed the card, Detective Giannakoulias began to interview him. The interview lasted from approximately 4:20 p.m. until the point at which Bell agreed to give a taped statement, at approximately 2:30 a.m. During the interview, Bell was not handcuffed, he was sitting near the detective's desk, and there were plenty of people around. Breaks were taken during the interview while detectives checked on the legitimacy of the alibi information Bell was providing, got something for Bell to eat or drink, or walked Bell to the bathroom.

At approximately 2:30 a.m., Bell agreed to give an audiotaped statement. The taped interview lasted until 3:24 a.m. At the beginning of the tape, Bell acknowledged that he was "giving [the] statement voluntarily," that the police had read him his rights earlier the day before, that he had answered yes on all of the questions on the PD–47 card and signed the card, and that he understood that he was charged with murder. Detective Giannakoulias testified that during the taped interview Bell was allowed to talk freely, did not ·complain about· what was happening during the taking of the statement, and did not appear to be under the influence of alcohol or drugs. No promises were made to Bell in exchange for giving the taped statement.

In the taped statement, Bell for the most part provided ˙ alibi information, claiming that he was in a different location with his friends at the time the decedent was killed. He said that a friend had told him about the murder on the night of the incident but that he did not learn who was killed until the next day. Bell acknowledged that the decedent had robbed him on a prior occasion and that, on yet another occasion, the decedent had shot bullets in his direction, although none of the bullets were "coming [his] way."

Sometime around 4:50 a.m. on January 29, Bell was received in the central cellblock, but he was not booked or placed on the lockup list until 8:00 a.m. The courthouse caught fire later that day and most proceedings were canceled. Bell was presented to the court the following day, January 30, 1998, at 4:20 p.m., approximately fifty-four hours after his arrest on January 28 at 10:30 a.m.

Bell testified at the hearing on his own behalf. At about 9:00 a.m. on January 28, 1998, Bell learned that there was a ·warrant for his arrest and turned himself in at the Seventh District police station between 9:45 and 10:00 a.m. that same day. He waited in a chair and at about 10:30 a.m., a police officer ·took him into a room and handcuffed him to a chair. Bell waited there until Detective Giannakoulias arrived around 4:00 p.m. Bell claimed that Detective Giannakoulias began to question him

before advising him of his *Miranda* rights. He said he wanted to "tell [the police] the truth so they could find out that [he] didn't do it."

Bell acknowledged on cross-examination that the detectives did not force him to talk to them, that he knew he was under arrest for murder, that the police read him his rights, and that he understood those rights when he signed his initials on the PD–47 card. He also testified that once the tape recorder was on, Detective Giannakoulias did not ask him any questions that he had not previously asked. Later during cross-examination and redirect, Bell testified that he only spoke to the police because he "had to," "not on [his] own will," that he wanted to go home and not be in custody.

## B.

Before granting Bell's motion to suppress, the trial court made the following findings of fact: An arrest warrant had already been issued for Bell prior to his arrival at the police station, "so there had been a judicial ... finding of probable cause in this case." Bell "appeared voluntarily" at the police department between 9:45 and 10:00 in the morning on January 28, 1998 and waited until about 10:30 when a detective stepped him back and told him he was not under arrest but handcuffed him. The court concluded that Bell was under arrest at 10:30 a.m. Detective Giannakoulias released Bell from his handcuffs and warned him of his rights at about 4:20 p.m., and then "questioned [Bell] and checked out his story for approximately ten hours; to about 2:30 in the morning on January 29th." The court further found that there was no reason apparent on the record why Bell couldn't have been brought before the court on January 28. The time between Bell's arrest and his actual arraignment was approximately fifty-four hours, from 10:30 in the morning on January 28 until 4:20 in the afternoon on January 30, although the court also found that Bell would have been arraigned

sometime between 11:00 a.m. and 6:00 p.m. on January 29 had it not been for the fire in the courthouse. The court concluded that during his detention Bell knew the nature of the charge against him, he had been advised of his *Miranda* rights six hours after he was taken into custody, he was advised of his right to counsel before he was questioned, and he did not have counsel at any time during that fifty-four-hour pre-presentment detention. Neither party took issue with the court's statement of facts.

## C.

The court ruled that it would suppress Bell's statement for use in the government's case in chief and rebuttal, holding that the statement was involuntary as a matter of law. The primary factor underlying the decision to suppress was the trial court's conclusion that there was unnecessary delay during various time frames during Bell's pre-presentment detention and that suppression was required "[i]f there is any vitality, whatsoever, remaining to the *McNabb–Mallory* doctrine, if there's any vitality, whatsoever, to Section 3501 of Title 18 of the United States Code ..." The court concluded that the delay between Bell's arrest at 10:30 a.m. and Detective Giannakoulias' arrival at 4:00 p.m. was "clearly unreasonable":

> Once there's an arrest warrant out for somebody and once he is arrested, the obligation of the police is to bring him before the Court without undue delay. And, that doesn't mean they have 6 hours to look for some other detective who may want to question him. And, it certainly doesn't mean that once that detective finds him, he's got another 10 hours to question him.

With respect to the period of questioning, the court observed:

> Consequently, while I do not have any problems with the adequacy of the *Miranda* warnings or the waivers at the time they were made, I have a serious,

serious question about whether those rights and the waiver particularly retained any vitality when the police finally started to question this man at 2:30 in the morning [2] after he'd already been in custody for 14 hours at that point. The entirety of that period, in my view, being unreasonable delay.

In the end, however, the trial court ruling seems to have rested most particularly on the overall fifty-four-hour delay between Bell's arrest and presentment, thirty hours of which the court found to be unreasonable:

I believe the finding of involuntariness, here, as a legal matter must stand for the extensive unreasonable delay that occurred in this case. And, I think the Court of Appeals made it clear in *Everett[Everetts]* [3] that there is a point ... when delay becomes so long that it is almost, if not virtually, *prima facie* unreasonable. If ... 54 hours isn't it, I don't know what is.

I think in fairness to the Government, I should also note that I believe the last ... 24 hours of this delay ... was obviously reasonable [due to the courthouse fire].

Resting its ruling, as we understand it, on the legal ground of the presentment delay, the court did not make a finding of involuntariness based on the traditional indicia of coercion, stating to the contrary:

Now, I want to make it clear for the record here that I do not find many of the traditional indicia of involuntariness, here. I don't believe this man was de-

prived of food, although I do believe he was deprived of sleep and rest. I don't find the police exercised any physical abuse of this man. He wasn't hit or threatened in any way, and I want [the] record to be clear on that matter. [4]

The one concern the court expressed was the duration of the questioning, observing that he was given his *Miranda* rights in the afternoon at 4:00 "and then he's basically deprived of any kind of sleep or rest until 2:20 in the morning when the police finally start to question him." The court again misspoke in this regard since it had previously found that the questioning actually began about 4:30 the previous afternoon; it was the taking of the audio-taped statement, setting forth the substance of the prior questioning, that began at 2:20. But we do not understand the court to have ruled that what it termed the deprivation of rest and sleep rendered the statement involuntary in the usual sense, apart from the delay in presentment.

## III.

### A.

Superior Ct.Crim. R. 5(a) provides that after an arrest, the police "shall take the arrested person without unnecessary delay before the Court." In *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), the Supreme Court, exercising its supervisory power, held that failure to comply with the comparable federal rule required the exclusion of a statement by the defendant given during the period of unnecessary delay. [5]

---

2. This was an inaccuracy. As the court had previously found, the questioning began around 4:20 p.m. The audio statement began at 2:30 in the morning.

3. *Everetts v. United States*, 627 A.2d 981 (D.C. 1993), *cert. denied*, 513 U.S. 848, 115 S.Ct. 144, 130 L.Ed.2d 84 (1994).

4. The court also stated its view that the government's delay was "at least in part for the purpose, not of coercing [the Defendant], but of obtaining a statement ..."

5. In *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), before enactment of Fed.Crim. R. 5(a), the Supreme Court had rendered a similar holding with respect to an unnecessary delay in initial appearance before a magistrate. Hence, the suppression principle came to be known as the *McNabb–Mallory* rule. Our Rule 5(a) labels this first court appearance as "Initial proceedings before the Court"; the comparable federal rule is entitled "Initial Appearance Before the Magistrate Judge." The term "presentment" is often used to describe this

Subsequently in 1968, Congress enacted a statute, now codified as 18 U.S.C. § 3501 (1994), relating to the admissibility of confessions[6] in such circumstances. That statute is applicable to all courts in the District of Columbia as well as other federal courts.[7] It provides that a voluntary confession given within six hours after arrest[8] shall not be inadmissible solely because of delay in bringing the person before a judicial officer. *Id.* § 3501(c). It also provides, more broadly, that a confession "shall be admissible in evidence if it is voluntarily given" and that "the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness." *Id.* § 3501(a).[9] The statute also sets forth criteria to be considered in determining whether a confession was voluntary. *Id.* § 3501(b).[10]

▮▮▮ The right of prompt presentment contained in Rule 5(a), however, can be waived. In particular, we have held repeatedly that "a valid waiver of an individual's *Miranda* rights is also a waiver of his *Mallory* right to presentment without unnecessary delay." *Bond v. United States,* 614 A.2d 892, 899 (D.C.1992) (internal quotation and citations omitted). The waiver is valid even if obtained during the period of unnecessary delay. *Everetts, supra* note 3, 627 A.2d at 986 (confession admissible in spite of unreasonable 11–hour pre-presentment delay prior to confession, where 16–year–old–defendant validly waived *Miranda* rights); *Byrd v. United States,* 618 A.2d 596, 598–99 (D.C.1992) (confession taken at least nine hours after arrest admissible despite pre-presentment delay of more than a day where defendant validly waived *Miranda* rights); *Bond, supra,* 614 A.2d at 901 (confession taken thirty-six hours after arrest and during sixty-two-hour pre-presentment delay); *Bliss v. United States,* 445 A.2d 625, 633 (holding admissible confession taken approximately twelve hours after arrest and

first step in the proceedings, as is the term "arraignment." This latter usage has been criticized as incorrect, *see, e.g.,* 1 Charles Alan Wright, Federal Practice and Procedure § 71 (3rd ed.1999); *Goldsmith v. United States,* 107 U.S.App.D.C. 305, 277 F.2d 335, 338 n. 2a, *cert. denied,* 364 U.S. 863, 81 S.Ct. 106, 5 L.Ed.2d 86 (1960), but is nonetheless very common, even in 18 U.S.C. § 3501 itself.

6. The term "confession" is defined in 18 U.S.C. § 3501(e). Although the statement here is more in the nature of an alibi, no one contests the applicability of the statute and we proceed on that assumption.

7. The previous year, Congress had enacted somewhat similar legislation applicable only in the District of Columbia, but providing only a three-hour "safe haven" period. *See* D.C.Code § 4–140 (1994).

8. This time period may be lengthened if the trial court finds more time is needed because of transportation difficulties.

9. The "tension" between subsections (a) and (c) has been much noted, including by the Supreme Court in *United States v. Alvarez-Sanchez,* 511 U.S. 350, 356, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994). The Court found it unnecessary to address the issue. In particular, the circuits are split as to the proper application of the statute in cases where a statement is given after the expiration of six hours. A lengthy discussion of the various approaches in the circuit cases appears in the Ninth Circuit opinion in *U.S. v. Alvarez-Sanchez,* 975 F.2d 1396 (1992). We need not address that issue here in light of our holding as to the continued validity of the *Miranda* waiver.

10. Section 3501(b) states:

The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsed between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any such statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel, and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

during thirty-six-hour pre-presentment delay), *modified on other grounds,* 452 A.2d 172 (D.C.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 756, 74 L.Ed.2d 972 (1983).

■ The rationale underlying this waiver rule is that the fundamental concerns that led to the *Mallory* and *McNabb* decisions are adequately addressed by compliance with the requirements of *Miranda,* which was decided after *Mallory* and *McNabb:*

> [T]he primary purpose of the *Mallory* rule is to ensure that suspects are advised of their rights to silence and counsel, to prevent the coercion inherent in prolonged custodial isolation. When there is intelligent waiver of the rights to counsel and to remain silent, and the accused voluntarily submits to interrogation, this aim of the *Mallory* rule is accomplished.

*United States v. Poole,* 161 U.S.App.D.C. 289, 294, 495 F.2d 115, 120 (1974), *cert. denied,* 422 U.S. 1048, 95 S.Ct. 2667, 45 L.Ed.2d 701 (1975). Further, another important rationale of the requirement of prompt presentment, determination of probable cause before significant restraint of liberty occurs, is satisfied in this case because Bell was arrested pursuant to a warrant. *See United States v. Salamanca,* 300 U.S.App.D.C. 384, 389, 990 F.2d 629, 634, *cert. denied,* 510 U.S. 928, 114 S.Ct. 337, 126 L.Ed.2d 281 (1993); *cf. Bond, supra,* 614 A.2d at 900 n. 18 (concern of ensuring probable cause determination "not implicated here since appellant had been indicted ... before his arrest ...").

■ Thus, we have recognized that "voluntariness of the confession and of the waiver are the touchstone of analysis under § 3501 ..." *Everetts, supra,* 627 A.2d at 985. In such determinations, we will disturb the trial court's findings of fact only if they lack "substantial support in the evidence." *Byrd, supra,* 618 A.2d at 598. However, we review *de novo* the legal question of whether Bell's statement was voluntary. *See id.* at 599. In reviewing voluntariness, we focus on "whether,

under the totality of the circumstances, the will of [Bell] was 'overborne in such a way as to render his confession the product of coercion.'" *United States v. Thomas,* 595 A.2d 980, 981 (D.C.1991) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). In addition to the factors set forth in 18 U.S.C. § 3501, we consider "'the individual's prior experience with the legal system, the circumstances of the questioning, [and] any allegations of coercion or trickery resulting in a confession.'" *Byrd,* 618 A.2d at 599 (quoting *Bliss, supra,* 445 A.2d at 631).

**B.**

■ We think the government is essentially correct in its argument that the trial court here improperly discounted the effect of Bell's *Miranda* waiver on his right to prompt presentment. In particular, we conclude that the trial court erred in thinking that in the circumstances here, the delay in the arraignment was a factor of any controlling relevance, apart from the usual consideration given to the passage of time between Bell's arrest and the giving of his statement. As we understand its ruling, the trial court did not find that the statement here was involuntary in fact based on a factual finding that Bell's will had been overborne, but rather that a finding of involuntariness was compelled "as a matter of law" primarily over its concern with the extensive delay in presentment. But where the right to prompt presentment has been waived, the delay in presentment after Bell made his statement can have no independent significance in the legal determination of voluntariness, and the passage of time between Bell's arrest and his statement, even if combined with the fact that Bell did not sleep or rest during this time cannot in themselves render the statement involuntary as a matter of law absent a factual determination of their impact on Bell's will. Here, the trial court appears to have suppressed the statement as a penalty for unreasonable delay in presentment, rather than focusing

upon any effect of that delay on the voluntariness of the statement itself.

The trial court concluded that there was an unnecessary delay in presentment in the six hours following Bell's arrest. Nonetheless, the trial court also concluded that Bell had "adequate[ly]" waived his *Miranda* rights. That waiver in fact occurred during that initial six-hour period, and even if the statement itself had occurred during the unnecessary delay portion of that six-hour period under the statute, it could not have been suppressed solely because of the delay. 18 U.S.C. § 3501(c). At least where a valid *Miranda* waiver is given during the initial six-hour period, we think it must be treated as having waived consideration of any unreasonable delay in presentment occurring during that period as a continuing relevant factor in itself.[11]

The focus then must turn to the question of the voluntariness in fact of the statement that was given ten hours after the *Miranda* waiver. The mere passage of time in detention may be, of course, a consideration in such determinations, quite apart from any delay in presentment. But the record here is void of any indication that the passage of time as such or lack of rest or sleep caused appellant's will to be overcome and the statement rendered involuntary in fact. Indeed, we think it quite apparent from the trial court's findings that apart from its concern about the delay in presentment, it would have considered the statement to be entirely voluntary.

Bell had validly waived his *Miranda* rights, and thus his right to prompt presentment, and had begun speaking to Detective Giannakoulias immediately thereafter. Although it would have been the better course for the detective to re-advise Bell of his *Miranda* rights prior to taking the taped statement, he did confirm with Bell at the start of the statement that Bell had been advised of and had waived such rights earlier in the evening and that he was giving the statement voluntarily. The police did not physically abuse or threaten Bell in any way. There is no evidence of promises of leniency or trickery to induce the statements. Bell was an adult and was not under the influence of narcotics or alcohol. Although the trial court noted that Bell had been "deprived of sleep and rest,"[12] Bell never claimed in his testimony or through counsel that he was fatigued or that tiredness was a factor that caused him to give the statement. Here Bell voluntarily turned himself in to police and during questioning sought to convince them of his innocence. Moreover, the court did not make a finding that the passage of time between arrest and the statement was coercive or otherwise rendered the statement involuntary as a factual matter. "In the absence of other factors indicating coercion, we will not conclude that appellant's confession was involuntary simply on the basis of the delay between his arrest and the time of his [statement]." *Byrd, supra,* 618 A.2d at 599 (nine or nine and a half hours between arrest and videotaped confession). *See also Bond, supra,* 614 A.2d at 901 ("It is

**11.** Delay in presentment as an independent factor is not to be confused with the passage of time itself and any accompanying isolation and the like, which of course may be relevant in their own right in a determination of voluntariness in fact in any situation quite apart from one having Rule 5(a) consideration, as noted in the text *supra.*

**12.** This was not included among the court's findings of fact. A finding that Bell was deprived of sleep and rest is not sufficient by itself to render the statement involuntary.

*See Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (deprivation of sleep only one of the many factors in the "totality of all the surrounding circumstances" analysis); *Muniz v. Johnson,* 132 F.3d 214 (5th Cir.), *cert. denied,* 523 U.S. 1113, 118 S.Ct. 1793, 140 L.Ed.2d 933 (1998) (in case where interview started more than twelve hours after arrest, rejecting claim that statement involuntary due to fatigue where ample time to rest before interview started and no evidence to suggest that defendant complained to officers of fatigue).

not the lapse of time but the use of the time ... to employ the condemned psychologically coercive ... practices which is proscribed by the cases")(quoting *United States v. Marrero,* 450 F.2d 373, 376 (2nd Cir.1971), *cert. denied,* 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972)).

Otherwise put, we see nothing in the record or in the trial court's findings to suggest that the *Miranda* waiver did not retain its efficacy in the normal sense (that is, apart from any consideration of delay in presentment) when the audiotaped statement was made. The questioning here took place in a continuing context. We have never required a reaffirmation of a *Miranda* waiver in such circumstances, and cases from other jurisdictions indicate that *Miranda* waivers, once made, have significant endurance. *See, e.g., Guam v. Dela Pena,* 72 F.3d 767 (9th Cir.1995) (new *Miranda* warning not required fifteen hours after initial waiver of rights and after break of several hours in questioning); *United States v. Andaverde,* 64 F.3d 1305, 1313 (9th Cir.1995) ("one day interval between *Miranda* warning and waiver, and ... statement to [officer] was not unreasonable"), *cert. denied,* 516 U.S. 1164, 116 S.Ct. 1055, 134 L.Ed.2d 199 (1996); *Martin v. Wainwright,* 770 F.2d 918, 930–31 (11th Cir.1985) (new *Miranda* warning not required where one week interval between waiver and confession where defendant indicated he still understood his rights at time of confession), *modified,* 781 F.2d 185, *cert. denied,* 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986); *Biddy v. Diamond,* 516 F.2d 118, 121–22 (5th Cir. 1975) (admission of statement despite 12–day interval between *Miranda* warning and statement where detectives did not repeat warnings but confirmed that defendant understood her rights), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 194 (1976). As our own federal circuit court noted in dealing with the effect of a *Miranda* waiver on Rule 5(a) rights, "[a] valid *Miranda* waiver is necessarily, for the duration of the waiver, also a waiver of an immediate judicial warning of constitution-

al rights." *Frazier v. United States* 136 U.S.App.D.C. 180, 185, 419 F.2d 1161, 1166 (1969) (internal footnotes omitted). If the *Miranda* waiver remained valid in its waiver of the constitutional right against self-incrimination and right to counsel, we see no basis on which to conclude that it nonetheless had lost its efficacy to waive the rule-based right to prompt presentment.

The trial court also took into account in its voluntariness determination the period of time that had lapsed between the statement and appellant's presentment almost forty hours later. Strictly speaking, the time period between the audiotaped statement and presentment would appear to have no logical relevance to the voluntariness in fact of Bell's statement. *See United States v. Mitchell,* 322 U.S. 65, 69, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); *Bond, supra,* 614 A.2d at 901 n. 18 (quoting *Holt v. United States,* 381 A.2d 1388, 1389 n. 1 (D.C.1978) ("[a]t best, [a defendant can] move only to suppress evidence gained *by reason* of the delay") (brackets and emphasis added)), and *Pettyjohn v. United States,* 136 U.S.App.D.C. 69, 74, 419 F.2d 651, 656 (1969) (post-confession delay, even if unreasonable, "cannot retroactively vitiate an otherwise valid confession"). As the Supreme Court explained in *Mitchell* (a case decided shortly after *McNabb*), in reversing a suppression order where the defendant confessed shortly after arrest but then was illegally detained for eight days before arraignment:

> [T]he illegality of Mitchell's detention does not retroactively change the circumstances under which he made the disclosures. These, we have seen, were not elicited through illegality. Their admission, therefore, would not be use by the Government of the fruits of wrongdoing by its officers. Being relevant, they could be excluded only as a punitive measure against unrelated wrongdoing by the police. Our duty in shaping rules of evidence relates to the propriety of admitting evidence. This power is not

to be used as an indirect mode of disciplining misconduct.

322 U.S. at 70–71, 64 S.Ct. 896.

Nonetheless, it must be noted that 18 U.S.C. § 3501(b), in setting forth the factors to be considered in determining voluntariness, includes "the time elapsing between arrest and arraignment of the defendant making the confession." And we have noted that "[t]he government's reliance on the waiver of *Miranda* rights becomes weaker as the period of pre-arraignment detention increases," *Bond, supra,* 614 A.2d at 901 (internal quotations omitted), which "necessarily implies that *at some point* unjustified delay in presentment may trump all other factors in the ultimate voluntariness determination." *Everetts, supra,* 627 A.2d at 985 (emphasis in original) We need not here explore in any depth the circumstances where such considerations might come into play. We are quite satisfied that on the facts here, the waiver of Rule 5(a) rights continued to be valid through the giving of the audiotaped statement some ten hours later and that, under the case law cited above, the lapse of time thereafter until the time of presentment was insufficient to require the suppression of a statement that was given voluntarily.

*Reversed.*